December 29, 1992

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

COMMONWEALTH OF THE NORTHERN ) APPEAL NO. 91-035
MARIANA ISLANDS, ) CRIMINAL ACTION NO. 91-106
 )
 Plaintiff/Appellant, )
 )
 vs. ) OPINION
 )
ISIDRO R. LIZAMA, )
 )
 Defendant/Appellee. )
_____)

Argued and Submitted June 30, 1992

Counsel for Appellant: Cheryl M. Gill
 Assistant Attorney General
 Attorney General's Office
 2d Administration Building
 Capitol Hill
 Saipan, MP 96950

Counsel for Appellee: G. Anthony Long
 Caller Box AAA 1797
 Second Floor Lim's Building
 San Jose
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

VILLAGOMEZ, Justice:

## I.

### PROCEEDING BELOW

On June 20, 1991, the CNMI government ("Government") charged defendant Isidro R. Lizama ("Lizama") with the crimes of importing crystal methamphetamine (a drug commonly referred to as "ice") into

402

the Commonwealth under 6 CMC § 2301(a) and possession of controlled substance under 6 CMC § 2141(a)(1).

On August 27, 1991, Lizama moved to suppress the evidence consisting of the ice confiscated from him at the airport when he entered the Commonwealth direct from the Philippines.

In support of his motion, Lizama argued that the rules and regulations authorizing the Customs Division to inspect and confiscate the ice were void. Therefore, the customs officers had no legal authority to inspect or confiscate without a search warrant or probable cause. Since the customs officers possessed no search warrant and there was no probable cause, the inspection and confiscation of the ice were unauthorized and illegal. Therefore, the evidence is inadmissible and should be suppressed.

In response to the motion to suppress, the Government did not address the issue of whether the Customs rules and regulations were invalid. The trial court granted the defendant's motion on the basis of the regulation's invalidity.

The trial court reasoned that 1 CMC § 9102(d), came into effect on January 1, 1984, and that all existing regulations had to be refiled and republished within ten (10) days after that date in order to remain effective. The Customs Division regulations, which were in existence prior to January 1, 1984, were not refiled or republished within ten (10) days after that date. Consequently, the regulations became void. As a result, the customs officers had no legal authority to conduct a warrantless search of the statue, Lizama's baggage, or his person. The trial court did not address

the issue of whether the existence of the Customs Division dissipated upon the voiding of the regulations which established it.

The Government subsequently moved the trial court to reconsider the suppression of the evidence arguing that the rules and regulations were not void.

The trial court held a hearing on the motion to reconsider. After the hearing, it issued an amended order affirming its previous order, which granted the motion to suppress, and added another ground for concluding that the rules and regulations were void: the copy of the regulations filed with the Registrar of Corporations and the Governor were not "certified" as required under 17 TTC § 5(1).

The Government timely appealed.

## II.
## FACTS

### A. Discovery of The Ice:

On June 15, 1991, Lizama arrived in Saipan on a direct flight from the Philippines.[1] He approached the customs counter carrying, among other things, a statue which appeared to the customs officer to be freshly painted. The fresh paint raised the customs officer's suspicions and he decided to further inspect the statue.

With the help of an employee of Continental Airlines, the customs officer ran the statue through the airlines' baggage x-ray

---

[1] Customs Officer Cepeda testified that "direct from Manila is a high-risk flight."

404

machine. The x-ray machine revealed an unidentifiable dark spot inside the statue and three nails (which were later determined to be screws) at the base of the statue.

After the x-ray, another customs officer drilled several holes into the statue. After each drilling, the drill bit extracted a residue of white substance and plastic. The officer then cut through the base of the statue with a saw and pried open the base of the statue with a crowbar. They then discovered three plastic bags, each containing ice, inside the statue.

### B. The Regulations and the TT and CNMI Administrative Procedure Acts:

The Department of Finance promulgated and adopted Revenue and Taxation Regulation No. 8301 on March 31, 1983, pursuant to 17 TTC §§ 2 and 4. The Regulations established customs service and procedure and authorized customs to inspect baggage, hand-carried parcels, cargo, and passengers arriving in the Commonwealth without a warrant.

Title 17 of the Trust Territory Code contains the Administrative Procedure Act ("APA") of the Trust Territory of the Pacific Islands ("TT") which came into effect on July 1, 1974. For purposes of this appeal, the following sections of the TT Code need to be examined.

### § 2. Publication of Rules and Orders.

(4) No regulation or other rule adopted by any agency before the date this chapter comes into effect shall remain in effect unless such regulation or other rule is filed with the registrar of corporations and with the

district administrator of each district in the Trust Territory within ten days of the date this chapter comes into effect as to regulations, and within ninety days thereafter as to other rules, and is published in the territorial register in accordance with the provisions of this section. Regulations and other rules not filed within such period shall become void and subject to reinstatement only in accordance with the provisions of sections 4 and 5 of this chapter. (P.L. No. 5-86, § 2.)

§ 5. Filing and effective date of rules and regulations.

(1) Each agency shall file in the office of the registrar of corporations and of each district administrator in the Trust Territory a certified copy of each rule adopted by it, including all rules existing on the effective date of this chapter. The registrar of corporations and the district administrator in each district in the Trust Territory shall keep a permanent register of the rules open to public inspection.

Beginning in 1974, the Trust Territory APA applied in the Northern Marianas as part of the Trust Territory -- the Marianas District. In 1978, when the Marianas District separated from the Trust Territory and became a self-governing Commonwealth in political union with the United States, the Trust Territory APA continued to apply pursuant to Section 2 of the Schedule of Transitional Matters of the CNMI Constitution.[2] This is the reason the Department of Finance enacted Regulation No. 8301 pursuant to the Trust Territory APA in 1983.

On January 1, 1984, Public Law 3-90, which enacted the Commonwealth Code (referred to as the "Code" and cited as "CMC"), became

---

[2] Section 2: Continuity of Laws. Laws in force in the Northern Mariana Islands on the day preceding the effective date of the Constitution that are consistent with the Constitution and the Covenant shall continue in force until they expire or are amended or repealed.

406

effective. As enacted, the Code set forth existing laws, including the Trust Territory APA, and renumbered those laws to conform to the format of the new Commonwealth Code.

Pursuant to PL 3-90, the Trust Territory APA was re-codified under Title 1 of the [new] Commonwealth Code. Sections 9102(d) and 9105(a) of Title 1 presently provide:

§ 9102. Publication of Rules and Orders.

(d) No regulation or other rule adopted by any agency before the date this Chapter comes into effect may remain in effect unless the regulation or other rule is filed with the Registrar of Corporations and with the Governor within 10 days of the date this Chapter comes into effect as to regulations, and within 90 days thereafter as to other rules, and is published in the Commonwealth Register in accordance with the provisions of this Section. Regulations and other rules not filed within that period shall become void and subject to reinstatement only in accordance with the provisions of Sections 9104 and 9105.

§ 9105. Filing and Effective Date of Rules and Regulations.

(a) Each agency shall file in the Offices of the Registrar of Corporations and the Governor a certified copy of each rule adopted by it, including all rules existing on the effective date of this Chapter. The Registrar of Corporations and the Governor shall keep a permanent register of the rules open to public inspection.

These two sections of the Commonwealth Code came from and are the same as Sections 2(4) and 5(1) of the Trust Territory Code (quoted above), except for minor modifications made in order to clarify that the law applies to the Commonwealth.[3]

---

[3] Pursuant to the comments of the Law Revision Commission in the CMC, the source of each section of the Commonwealth APA is a corresponding section in the Trust Territory APA under Title 17. The source for 1 CMC § 9102 is 17 TTC § 2. The source for 1 CMC § 9105 is 17 TTC § 5.

With respect to laws existing "and in force in the Common-wealth"[4] prior to the enactment of the CNMI Code and which are "set forth"[5] in the CNMI Code, the enactment provides that "[t]he provisions of this Code, as far as they are substantially the same as existing law, shall be construed as continuations thereof and not as new enactments."[6]

## III.

### ISSUE PRESENTED AND STANDARD OF REVIEW

The issue on appeal is whether the trial court erred in suppressing evidence (the ice), confiscated during a border search by customs officers, on the grounds that the customs officers had no authority to conduct the search because the source of the officers' authority, Department of Finance Regulation No. 8301, was invalid since it was not properly certified under 17 TTC § 5(1) and was not refiled and republished pursuant to 1 CMC § 9102(d) upon the enactment of the Commonwealth Code.

Whether Regulation No. 8301 was properly certified under 17 TTC § 5(1) and whether it should have been republished and refiled upon the enactment of the Commonwealth Code are questions of law which we review de novo.[7] Aquino v. Tinian Cockfighting Board, No.

---

[4] See the preamble to Public Law 3-90.

[5] Id.

[6] Section 8, Public Law 3-90 (CMC vii.).

[7] The appellant raised other issues. However, since our determination of the above will fully dispose of this appeal, we need not reach the other issues.

91-012 (N.M.I. Sept. 25, 1992).

## IV.

## ANALYSIS

For the reasons set forth below, we conclude that the trial court erred in suppressing the evidence. The customs officers do possess lawful authority, pursuant to Regulation No. 8301, to conduct border searches. Regulation No. 8301 did not become void ten days after the enactment of the Commonwealth Code on January 1, 1984, because no new enactment of the APA occurred. Also, the lack of certification under 17 TTC § 5(1), did not prevent the adoption of Regulation No. 8301 on March 31, 1983. We, therefore, reverse and remand the case for further proceedings.

### A. Certification under 17 TTC § 5(1) or 1 CMC § 9105(a).

In its Amended Order of November 1, 1991, the trial court ruled: "Therefore, the court finds that the document filed with the Office of the Registrar of Corporations were not properly certified as required by the Trust Territory Code or any other Code. On this basis alone, the regulation is void." (Emphasis added.)

On appeal, Lizama argues: "In any event, the Government's argument must fall as 1 CMC § 9105(a) required fiing [sic] a certified copy of Regulation No. 8301 upon enactment of 1 CMC § 9101 et seq. That was never done . . . . The Government's failure to comply with any lawful procedure for promulgating and

_adopting_ Regulation No. 8301 renders it void."[8] (Emphases added)

Lizama views § 5(1) of the TT APA and § 9105(a) of the Commonwealth APA as part of the rule promulgating and rule adopting process. That is, in order for Regulation No. 8301 to have been adopted, it had to have been certified and filed with the Registrar of Corporations and the District Administrator or Governor pursuant to these sections. That view is incorrect.

██Under §§ 5(1) and 9105(a), an agency is required to file its rule(s) or regulation(s) _after_ such has been promulgated and adopted pursuant to 17 TTC §§ 2 and 4(1) or 4(2), or 1 CMC §§ 9102 and 9104(a) or 9104(b). "Each agency shall file . . . a certified copy of each rule _adopted_ by it . . . ." (Emphasis added.) The Registrar and the District Administrator [i.e. Governor] are to ". . . keep a permanent register of the rules open to public inspection."[9] 17 TTC § 5(1); 1 CMC § 9105(a). This section does not express or imply that the required filing is for the purpose of effectuating the rule.

Nothing in either statute expressly or implicitly indicates that failure to file an _adopted_ rule under §§ 5(1) or 9105(a) makes such rule become automatically void. Although the statutes (17 TTC § 5(2); 1 CMC § 9105(b)) expressly provide that a regulation becomes effective ten days after _compliance_ with 17 TTC §§ 2 and

---

[8] Appellee's Brief at 20-21.

[9] The Registrar of Corporations testified that she received a copy of Regulations No. 8301 then stamped it for publication in the Commonwealth Register. The Commonwealth Register is published and distributed to all department directors, government agencies, governor's office and private subscribers. The Register is available to the public. See 17 TTC § 2(1) and 1 CMC § 9102(a).

410

4(1) or 4(2) or 1 CMC §§ 9102, 9104(a) and 9104(b), no compliance with §§ 5(1) or 9105(a) is required for a regulation to become effective. Consequently, even if the agency failed to file a certified copy of Regulation No. 8301 with the Registrar of Corporations and the District Administrator or Governor, after its adoption, it did not become void.

We note one significant difference between the physical layouts of the Trust Territory and the CNMI governments which impacts the need to file regulations both with the Registrar of Corporations and the District Administrator (under T.T.) or the Governor (under CNMI).

The Registrar of Corporations for the T.T. government was an employee of the T.T. Headquarters on Capitol Hill, Saipan. The rest of the Trust Territory consisted of six separate administrative districts spread out over 3,000,000 square miles of the Pacific Ocean. Even the District Administrator for the Marianas District was separate from the T.T. Headquarters and was located in Susupe.

Thus, the filing of a regulation with the registrar on Capitol Hill, Saipan, would not serve the people in the districts of Yap, Palau, Truk, Ponape, the Marshalls and even the people of Saipan, Tinian and Rota. Therefore, it made practical sense under the T.T. to require the filing of regulations not only with the registrar, but also the "district administrator in each district in the Trust Territory . . . ." 17 TTC § 5(1). (Emphasis added.)

Under the CNMI government, however, the registrar is an

employee of the Attorney General's Office, which is situated in the same building and on the same floor as the Governor's office. Thus, the filing of regulations with the registrar is no different from a filing with the Governor, for purposes of public inspections of such regulations. In fact, it would be duplicative and a waste of scarce government resources.

Therefore, although 1 CMC §§ 9102(c) and (d) require that a regulation be filed with the registrar and the governor before it could be enforced against any person, we conclude that a filing with the governor would not serve the purpose originally intended under the T.T. circumstances and, therefore, is no longer necessary. Filing with the registrar is adequate. See footnote 9, <u>supra</u>.

B. Whether Regulation 8301 should have been Refiled and Republished upon Enactment of the Commonwealth Code.

In its order of October 18, 1991, the trial court wrote:

> The effective date of the APA was January 1, 1984 (the effective date of the Commonwealth Code). Department of Finance Regulation 8301 was adopted on March 31, 1983, prior to the effective date of the Code. The agency was, therefore, required by law to refile and republish its regulations. As the defendant points out, the Department of Finance did not refile and republish and has not to date refiled and republished its regulations as required by 1 CMC § 9102(d). Therefore, this court determines that Department of Finance Regulation 8301 is void according to the express terms of § 9102(d).

In its amended order of November 1, 1991, it states: "Section 9102(d) must be treated as a <u>new enactment</u> since to interpret it

otherwise would strip it of all meaning as amended."[10] (Emphasis added.) It further states: "The Commonwealth Code's requirement that all existing and future regulations be filed with the Office of the Governor where no such requirement previously existed under Title 17 is a _substantial_ modification of the parallel provision of the Trust Territory Code."[11] (Emphasis added.)

The trial court concludes that the provisions of the APA as set forth in the Code are not substantially the same as the existing Trust Territory APA because terms like "District Administrator" and "Trust Territory" were changed to "Governor" and "Commonwealth" respectively. Therefore, the setting forth of the TT law in the Code constitutes new enactment and thus became law on January 1, 1984, the effective date of the Code.

The trial court further concludes that the reason the legislature changed the term "District Administrator" to "Governor" is to require all agencies, who have previously filed their regulations with the District Administrator, to now refile the same with the governor. We disagree.

Prior to the publication of the Commonwealth Code, the CNMI depended upon the TT Code as the primary basis of its written laws. Through Public Laws 2-11 and 3-75, the Commonwealth Law Revision Commission ("Commission") was established. Through its Executive Secretary and staff, the Commission: (1) compiled a list of all laws having force and effect in the Commonwealth; (2) classified

---

[10] Order at 11.

[11] Order at 13.

413

those laws into meaningful subject matter grouping; and (3) codified those laws into a comprehensive, coherent, and organized whole.[12]

After the Commission had fully organized the Code, it then submitted it to the legislature for adoption. Through Public Law 3-90, the legislature enacted the Code as submitted by the Commission.

In its explanatory note to the Code (found on pages i to iii of the Code) the Commission states:

> As set forth in PL 3-90, those portions of the Commonwealth Code listed in section 2(b) and 2(c) of that law have been codified as _positive law_. Those portions of the Code are _legal evidence_ of the law contained therein. All other portions of the Commonwealth Code establish _prima facie_ the _general and permanent laws_ of the Commonwealth. (Emphasis added.)

Positive laws are those laws which became enacted specifically[13] upon the adoption of the Code and constitute legal evidence of such laws. General and permanent laws are those laws which existed prior to the adoption of the Code and constitute _prima facie_ evidence of such law as they are set forth in the CNMI Code.[14]

The Trust Territory APA, which became Commonwealth APA upon adoption of the Code, is not listed as one of the positive laws under Sections 2(b) and 2(c) of PL 3-90. In other words, the APA was not actually and specifically enacted upon the adoption of the

---

[12] See page i of the Commonwealth Code.

[13] "Positive law. Law actually and specifically enacted or adopted by proper authority for the government of an organized jural society." Black's Law Dictionary, 1046 (5th ed. 1979).

[14] See Section 10 of Public Law 3-90.

414

Code. Instead, it was an existing law which continued (upon adoption of the Code) as *prima* *facie* evidence of the Commonwealth APA. The necessary modifications of certain terminology to the APA, such as changing "Trust Territory" to "Commonwealth" and "District Administrator" to "Governor," were made by the Commission.

Given this history of the transition from Trust Territory to Commonwealth, we find that the trial court incorrectly concluded that Regulation No. 3301 became void after the enactment of the Code. First, to *not* make the modifications would have made the law applicable only to the TT and inapplicable to the CNMI. Second, the modifications were minimal -- only to the extent necessary -- and the Commonwealth APA, as set forth in the Code, is substantially the same as the previously existing TT law.[15]

We conclude as a matter of law that the trial court's conclusion that there has been a substantial change in the APA is an error. The whole statute was retained as is, except for the necessary changes to conform with the structure of the CMC and the new names of the Commonwealth and its chief executive officer.[16] Therefore, the Commonwealth APA is not a new enactment. It is a

---

[15] Public Law 3-90.

 Section 8. Commonwealth Code: Provision Similar to Existing Law.

 The provisions of this Code, as far as they are substantially the same as existing law, shall be construed as continuations thereof and not as new enactments.

[16] Lizama's argument that the agency could not comply with the Trust Territory APA in 1983 because it carried the term "District Administrator," but we had a "Governor" instead is unpersuasive. Filing with the Governor satisfied the law. We discourage exalting form over substance. Manglona v. Civil Service Commission, No. 91-013 (N.M.I. Sep. 18, 1992).

415

continuation of existing TT law. As such, its effective date was July 1, 1974, not January 1, 1984.

Since Regulation No. 8301 was validly promulgated and adopted in 1983, and since the Commonwealth APA was not enacted as a positive law in 1984 (upon the adoption of the Code), but was a continuation of the existing Trust Territory APA, there was no requirement to republish and refile the regulation. The Regulation was properly adopted _after_ the enactment of the APA in 1974, not before its enactment, since no enactment occurred in 1984.

## V.

## CONCLUSION

Department of Finance Regulation No. 8301 was validly promulgated and adopted on March 31, 1983 pursuant to the Trust Territory APA, as it applied to the CNMI pursuant to Section 2 of the Schedule of Transitional Matters of the Commonwealth Constitution. Upon enactment of the Commonwealth Code, the Trust Territory APA was set forth therein as a continuation of permanent CNMI laws. That law came into effect on July 1, 1974. Necessary changes in form and language were made by the Law Revision Commission because the name of the Marianas District changed along with its chief executive officer. The provisions of the Code were substantially the same as existing laws prior to its adoption.

The Regulation was valid when adopted in 1983 and continued to be valid after the enactment of the CMC. It was not necessary to republish and refile with the Registrar and the Governor. The

416

Regulation was authorized by statute under 1 CMC § 2553(i). Since the statute and regulation authorize the customs officers to inspect Lizama without a warrant, the evidence should not have been suppressed on the basis that the customs officers' lack such authority.

We **REVERSE** the suppression order made by the trial court and **REMAND** the case for further proceedings in accordance with the Commonwealth Rules of Criminal Procedure.[17]

Dated this _29th_ day of _December_, 1992.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice

---

[17] Appellee has raised other issues for our consideration, such as, whether Lizama was properly merandized; whether non-government personnel could assist customs; and others. These issues are not properly before us on this appeal. The trial court's suppression of evidence was based solely upon the voidness of the Regulations.